IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAVIER RENTERIA,

       Plaintiff,

v.                                           No. 1:23-cv-01093-KK-JHR

LIBERTY MUTUAL GROUP INC.,
LIBERTY MUTAL INSURANCE COMPANY,
LIBERTY MUTUAL PERSONAL INSURANCE COMPANY,
ONESPAN, INC., and
ONESPAN NORTH AMERICA, INC.

       Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL [DOC. 69].**

THIS MATTER comes before the Court on Javier Renteria's First Motion to Compel Liberty Mutual Personal Insurance Company [Doc. 69]. Liberty Mutual filed a response [Doc. 73] and Renteria replied [Doc. 76]. The Court has reviewed the briefing, case file, and applicable law. The Court GRANTS IN PART Renteria's motion to compel.

**I.      PROCEDURAL BACKGROUND**

On December 8, 2023, Renteria filed suit alleging Liberty Mutual used a fraudulent signature on an uninsured/underinsured motorist coverage waiver to deny Renteria's claim arising from a severe collision in October 2022. [Doc. 1]. Liberty Mutual filed its answer and a counterclaim on February 19, 2024. [Doc. 9]. Renteria filed an answer to the counterclaim and then an amended answer on March 11, 2024. [Doc. 25]. Magistrate Judge Jennifer M. Rozzoni entered a scheduling order on May 3, 2024, and a stipulated protective order on May 31, 2024. [Docs. 38, 43].

1

On July 11, 2024, I was reassigned as the case's referral judge. [Doc. 48 text only]. The parties filed a joint motion to vacate and reset the scheduling order on July 29, 2024. [Doc. 49]. I entered a new scheduling order on August 20, 2024. [Doc. 60]. On September 27, 2024, Renteria filed the instant motion to compel after receiving Liberty Mutual's objections to his interrogatories and requests for production. [Doc. 69].

## II.    BRIEFING SUMMARY

Renteria moves to compel responses for interrogatories #1–5 and #7–11 and requests for production #1–31, 37, 42, and 44–49. [1] Renteria seeks extensive disclosures of Liberty Mutual's personnel, files, contracts, handbooks, organization, communications, and other documents as they may relate to Renteria's policy, Liberty Mutual's general practices, and OneSpan, the electronic signature service used by Liberty Mutual. [Doc. 69-2].[2] Renteria argues that Liberty Mutual's objections to his discovery requests—overbreadth, undue burden, irrelevance, confidentiality, and privilege—are non-specific, waivable, and otherwise inapplicable. [Doc. 69, at 9–27]; [Doc. 76]. Liberty Mutual responds that it raised valid objections and gave adequate responses to all discovery requests. [Doc. 73].

## III.    APPLICABLE LAW

Discoverable material includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors include the importance of the issues at stake, the importance of the discovery to resolving those issues, the amount in controversy, the parties' resources and relative access to information, and the burden of

---

[1] While Liberty Mutual objected to requests for production #32–36, 38–41, and 43, it later supplemented its disclosures and Renteria does not ask the Court to compel responses. [Doc. 69, at 25].

[2] After filing his motion to compel, Renteria filed an amended complaint adding Liberty Mutual Group Inc., Liberty Mutual Insurance Company, OneSpan, Inc. and OneSpan North America, Inc. as defendants. [Doc. 79].

producing the discovery compared to its likely benefit. *Id.* Courts enjoy considerable discretion to balance these factors. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995). The scope of discovery is presumptively broad: material that has any possibility of relevance to a claim or defense, even if the material itself is not admissible at trial, may be discoverable. Fed. R. Civ. P. 26(b)(1); *Sugar v. Tackett*, No. 20-cv-00331, 2021 WL 5769463, at *4 (D.N.M. Dec. 6, 2021) (quotation omitted). So long as requested discovery appears facially relevant, the objecting party must demonstrate it falls outside Rule 26's scope. *Cardenas v. Dorel Juv. Grp., Inc.*, 232 F.R.D. 377, 382–83 (D. Kan. 2005).

Discovery devices include interrogatories and requests for production. A party may serve an interrogatory inquiring about any matter within the scope of discovery. Fed. R. Civ. P. 33(a)(2). The responding party must answer an interrogatory itself if the party is a natural person, or by an officer or agent if the party is an entity. Fed. R. Civ. P. 33(b)(1). A party may also request for production any discoverable documents, electronically stored information, or tangible thing in the other's possession or control. Fed. R. Civ. P. 34(a)(1). A responding party has "possession, custody, or control" of a document if it has the right, authority, or practically ability to obtain and produce it. *City of Las Cruces v. United States*, No. 17-cv-00809, 2021 WL 330062, at *8 (D.N.M. Feb. 1, 2021); *Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 382 (D.N.M. 2018). A responding party must state any objection to an interrogatory or request for production with specificity or risk waiving it. Fed. R. Civ. P. 33(b)(4), 34(b)(2)(C).

If a party fails to properly respond to an interrogatory or request for production, the requesting party may move to compel a proper response. Fed. R. Civ. P. 37(a)(3)(B). If granted, the court must award the moving party its reasonable costs for the motion after giving the other party an opportunity to be heard. Fed. R. Civ. P. 37(a)(5)(A). But the court may decline an award

if it finds the moving party failed to attempt conferral in good faith, or the other party was

substantially justified in refusing the discovery, or other circumstances would make the award

unjust. *Id.* "Substantially justified" means reasonable minds could differ on the appropriateness of

the discovery requests served to the responding party. *See In re Rael*, 753 F. App'x 649, 657 (10th

Cir. 2018); *Lincoln v. State Farm Fire & Cas. Ins. Co.*, No. 18-cv-00652, 2019 WL 11623918, at

*2 (D.N.M. June 13, 2019). A court may also reduce a fee award in its discretion, or not award

fees at all, if it only partially grants the motion. Fed. R. Civ. P. 37(a)(5)(C); *Benavidez v. Sandia

Nat'l Lab'ys*, 319 F.R.D. 696, 730 (D.N.M. 2017).

## IV.    ANALYSIS

Renteria argues globally that Liberty Mutual's objections do not specify grounds beyond

boilerplate statements like "overly broad," "unduly burdensome," or "privilege". [Doc. 69, at 5–

7]. Many of Liberty Mutual's objections merely state that an interrogatory or request for production

"is overly broad, unduly burdensome, . . . and seeks information that is not reasonably calculated

to lead to the discovery of admissible evidence." *E.g.*, [Doc. 69-2, at 11, 18]. That generalization

subjects these objections to waiver. *AerSale, Inc. v. City of Roswell*, No. 22-cv-00218, 2023 WL

8005213, at *5 (D.N.M. Nov. 17, 2023). To its credit, Liberty Mutual provided some information

or documents "notwithstanding" objections. But a party must either disclose fully or object to the

discovery request, withhold applicable information, and state it has done so. *See Smash Tech., LLC

v. Smash Sols., LLC*, 335 F.R.D. 438, 447 (D. Utah 2020).

The Court retains discretion to modify or deny improper discovery requests. Fed. R. Civ.

P. 26(b)(2)(C); *see Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017). Here, if the Court

denied all of Liberty Mutual's improper objections discovery would balloon in scope due to the

phrasing of Renteria's requests. Therefore, I will not deny Liberty Mutual's objections categorically.

**A.**   **Interrogatories #2, 4–5, 7–9 and Requests for Production #1, 5–6, 8–20, 24–31, 37, 42, 44–45, and 48 Are Overbroad and Unduly Burdensome.**

   *1.*   *Applicable law for overly broad and unduly burdensome objections.*

While the rules endorse liberal discovery, courts need not permit parties to "engage in . . . unwieldy, burdensome, and speculative fishing expeditions." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (interpreting prior version of Rule 26(b)). The rules instead permit "parties to flesh out allegations for which they have at least a modicum of objective support." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 465 (D.N.M. 2018) (quoting *Rivera v. DJO, LLC*, No. 11-cv-01119, 2012 WL 3860744, at *1 (D.N.M. Aug. 27, 2012)). An example of overbreadth is use of omnibus terms like "concerning" or "relating to" in combination with generalized groups or categories of information. *Moses v. Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006); *see also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008). In addition, failure to specify relevant timeframes, subject matter, or locations create overbreadth and undue burden. *See Baylon v. Wells Fargo Bank, N.A.*, No. 12-cv-00052, 2013 WL 12164723, at *3 (D.N.M. Nov. 20, 2013); s*ee also Coolidge v. United States*, No. 21-cv-00307, 2022 WL 1026947, at *4 (D.N.M. Apr. 6, 2022).

   *2.*   *Interrogatory #2: Identify all individuals who handled Renteria's claim arising from his 2022 collision and "describe in detail" their role and activities.*

Liberty Mutual objected to interrogatory #2 as an impermissible contention interrogatory but also responded by identifying some individuals and directing Renteria to his disclosed claim

file.[3] [Doc. 69-2, at 9–10]. Renteria argues the response is improper because the file does not identify and explain the roles of all people involved in the denial of his 2022 claim. [Doc. 76, at 4].

Contention interrogatories ask a party to clarify the basis or scope of a claim or defense. *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007). They may encompass a party's opinion, the facts and evidence supporting an opinion, or an explanation of how a party believes relevant law applies. *Id.* A contention interrogatory is not per se impermissible. Fed. R. Civ. P. 33(a)(2). But a contention interrogatory may not demand the "equivalent of a narrative account," forcing a party to spell out "every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents." *Lucero*, 240 F.R.D. at 594.

Liberty Mutual's objection focuses on Renteria's definition of "describe in detail":

"[D]escribe in detail" means to identify documents authored, contributed to, created, reviewed, sent, received, in connection with the individual's activities, describe the individual's involvement in the preparation of the documents or in their supervision, and describe the motives behind the production of the documents, describe the the [sic] contributions by the individual, and describe the communications that the individual witnessed or to which they were a party, describe the purposes for which each communication was made, and describe the purposes of the individual's actions, discussions, interactions, and dealings.

[Doc. 69-2, at 8 n.2].

While not a contention interrogatory, the Court finds that definition is overbroad. "Describe in detail" extends beyond identifying individuals involved in Renteria's claim and their contributions to all documents, communications, and mental states pertaining to those

---

[3] "If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: … specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1).

contributions. However, Liberty Mutual did respond in part, and a dispute remains over whether its reference to initial disclosures provides all responsive information. Therefore, the Court ORDERS Liberty Mutual to supplement its response to interrogatory #2 by identifying each individual involved in the processing of Renteria's claim for his 2022 collision, their role, and a brief summary of the actions they took.

3.    *Interrogatory #7: Identifying employers of each individual referenced in the interrogatories, including named individuals and "any panels or committees" that discussed "matters related to" several discrete topics.*

Interrogatory #7 is an overbroad compound interrogatory. *Willis v. Geico Gen. Ins. Co.*, No. 13-cv-00280, 2016 WL 1749665, at *5 (D.N.M. Mar. 29, 2016) (compound interrogatory seeks information about logically discrete subjects). The interrogatory diverges from identifying employers to asking about "panels or committees" that may have discussed not only Renteria's insurance claim and disputed signature, but also OneSpan electronic signing ceremonies and uninsured/underinsured motorist coverage option forms generally. [Doc. 69-2, at 14]. Furthermore, asking for the employer of "each individual" for entire units like "HO Legal" may apply to persons with marginal to no relevance to this suit. Renteria admits the interrogatory is deliberately broad so that he may "ensure that all necessary parties are named." [Doc. 69, at 13]. However, that is an argument for a fishing expedition not sanctioned by the Rules of Procedure.

The Court SUSTAINS Liberty Mutual's overbreadth objection and ORDERS Liberty Mutual to supplement its response to interrogatory #7 limited to identifying the employers of all individuals named in Liberty Mutual's interrogatory responses.

4.    *Request for production #1: Contracts and agreements with OneSpan in effect on May 18, 2021.*

Request for production #1 is overbroad. Liberty Mutual's contract with OneSpan is relevant by virtue of Renteria's claims. *E.g.*, [Doc. 79, at 15] (alleging civil conspiracy). However, the term

"agreements" without qualification is vague and could encompass decisions as benign as the selection of a grammar style to follow in written contracts. *See United States v. Travelers Cas. & Sur. Co. of Am.*, No. 22-cv-00242, 2023 WL 8436248, at *8 (D.N.M. Dec. 5, 2023). The Court SUSTAINS Liberty Mutual's overbreadth objection and ORDERS Liberty Mutual to supplement its response to request #1 with production of all contracts (by any name so long as they bind the parties to bilateral promises) which governed the provision of electronic signature services by OneSpan to Liberty Mutual for its New Mexico operations during the time that Renteria's insurance contract at issue herein was negotiated, signed, and effective according to Liberty Mutual.

> 5. *Interrogatories #8–9 and requests for production #5–6, 8, 24–31, 37, 42, 44, and 45 require time, place, and subject-matter limitations.*

Interrogatories #8–9 and requests for production #5–6, 8, 24–31, 37, 42, 44, and 45 are overbroad and unduly burdensome. These requests all suffer from a lack of relevant dates and location: the timeframe when Liberty Mutual held Renteria's policy and Liberty Mutual's operations in New Mexico. Without these limits the requests could span decades across all fifty states, resulting in tens of thousands of pages of documents with little if any relevance to Renteria's policy or the people, departments, and offices who managed it.

In response to Liberty Mutual's objections to requests for production #28–31, Renteria does not oppose time parameters but asserts geographic limitations are inappropriate given the scope of his claims. [Doc. 76, at 10]. But Renteria pleads tort claims and violations of New Mexico's Insurance Code and Unfair Trade Practices Act, NMSA §§ 59A-16-1 et seq. and 57-12-1 et seq. [Doc. 79, at 11–18].[4] This Court has imposed geographic limitations on discovery requests

---

[4] Renteria does allege that Liberty Mutual violated the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), 15 U.S.C. § 7001 et seq., and Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a), but asserts no

involving similar claims. *Barela v. Safeco Ins. Co. of Am.*, No. 13-cv-01084, 2014 WL 11497826, at \*6 (D.N.M. Aug. 22, 2014).

The Court SUSTAINS Liberty Mutual's overbreadth and unduly burdensome objections and ORDERS Liberty Mutual to supplement responses to interrogatories #8–9 and requests for production #5–6, 8, 24–31, 37, 42, 44, and 45 limited both to the timeframe of negotiation, signing, and effectiveness of Renteria's policy with Liberty Mutual and to Liberty Mutual's operations in New Mexico.

Requests for production #24–28 and 30–31 are also overbroad for subject matter. They extend beyond issues of OneSpan, electronic signature verification, and uninsured/underinsured motorist coverage to encompass all of Liberty Mutual's business practices across the country. Request for production #24, for example, seeks all depositions, sworn statements, recorded statements, or transcripts of identified individuals without limit to their job with Liberty Mutual. These requests implicate countless irrelevant and even sensitive documents, such as an employee's testimony in a private family matter. Therefore, in addition to the time and place restrictions above the Court SUSTAINS Liberty Mutual's objections with leave granted Renteria to re-serve requests for production #24–28 and 30–31 with appropriate subject-matter limitations, such as uninsured/underinsured motorist coverage, electronic signature verification, or other issue of demonstrable relevance.

6.     *Interrogatories #4–5 and requests for production #9–13: Information relating to Liberty Mutual's relationship with OneSpan.*

---

cause of action through either. [Doc. 79, at 11–18]; *see also Grays v. Auto Mart USA, LLC*, No. 18-cv-01761, 2020 WL 6268630, at \*11 (D. Colo. Oct. 26, 2020) (holding no private right of action exists for the E-Sign Act). As for his claims under New Mexico's Insurance Code and Unfair Trade Practices Act, Renteria does not cite nor did the Court find any authority suggesting out-of-state business practices not also practiced in New Mexico can be encompassed by a claim under these statutes. Regardless, Renteria's speculation about the scope of Liberty Mutual's liable practices, without more, is insufficient to justify the burden a lack of a geographic limitation would place on discovery.

Liberty Mutual objects that its contractual relationship with OneSpan is not at issue in this suit. [Doc. 73, at 9]. However, the relationship between Liberty Mutual and OneSpan is implicated by Renteria's allegations, such as his claim for civil conspiracy. Each defendant's responsibilities for the retention or destruction of data concerning electronic signing ceremonies have facial relevance to scrutiny of the process by which Liberty Mutual accepted the disputed electronic signature.

For interrogatories #4–5, Renteria seeks the individual(s) with the most personal knowledge regarding Liberty Mutual's decision to use, then cease using, OneSpan, including "arrangements that relate to the retention or destruction of data." Requests for production #9–13 ask for documents, communication, and other "metadata" relating to the same. While the Court finds requests for production #9–13 overbroad for lack of timeframe, whether these interrogatories and requests are geographically overbroad depends on unavailable context: did Liberty Mutual decide to use OneSpan on a national or state level? If the decision to employ OneSpan signing ceremonies was made for Liberty Mutual's New Mexico operations specifically, then a narrower geographic scope is appropriate. If, however, the use of OneSpan in New Mexico was a consequence of a national policy, a poorly framed geographic limitation could exclude relevant information.[5]

Therefore, the Court SUSTAINS Liberty Mutual's overbreadth objections and ORDERS Liberty Mutual to respond to interrogatories #4–5 limiting their scope to the individual(s) with the most personal knowledge regarding the decision to use, and cease using, OneSpan for Liberty

---

[5] Liberty Mutual also argues it did respond to the interrogatories by identifying Jason Shattuck, but Shattuck's deposition testimony reveals that other individuals likely have more personal knowledge regarding the specific decision to retain OneSpan's services. [Doc. 73-1, at 2].

Mutual's New Mexico operations, whether that be in New Mexico directly or by consequence of a national policy.

Similarly, the Court ORDERS Liberty Mutual to respond to requests for production #9–13 limiting their scope to (1) the decision to use, and cease using, OneSpan's electronic signing ceremonies for Liberty Mutual's New Mexico operations, whether that be in New Mexico directly or by consequence of a national policy and (2) limited to the timeframe from the beginning of negotiations for Renteria's policy through Liberty Mutual's decision to cease using OneSpan.

7.    *Requests for production #14–16: Uninsured/underinsured motorist coverage forms and OneSpan "evidence summaries" from January 2017 to December 2023.*

These requests properly relate to the operation of OneSpan electronic signature ceremonies, Liberty Mutual's processing of uninsured/underinsured motorist coverage forms, and the email addresses that appeared with the disputed electronic signature on Renteria's waiver. However, the requests are too broad to the extent they are not limited to New Mexico. Therefore, the Court SUSTAINS Liberty Mutual's overbreadth objections and ORDERS Liberty Mutual to respond to requests for production #14–16 limited to Liberty Mutual's operations in New Mexico.

8.    *Requests for production #17–20: Material related to Comparion Insurance Agency.*

Renteria argues Comparion is relevant to this case as the subsidiary that employed the insurance agent who sold Renteria his policy. [Doc. 69, at 21]. However, Renteria does not include Comparion as a party or allege any involvement with the disputed electronic signature. Therefore, Renteria does not justify the sweep of contracts, agreements, and correspondences requested. The Court SUSTAINS Liberty Mutual's objections and ORDERS Liberty Mutual to respond to requests for Production #17–20 limited to documents containing or discussing contractual terms and agreements in effect on May 18, 2021, for Liberty Mutual's operations in New Mexico relating

to the acceptance and authentication of electronic signatures or compensation regarding uninsured/underinsured motorist coverage policies.

9.    *Request for production #48: All documents "concerning" memorandum, management reports, and other internal notes and communications regarding uninsured/underinsured motorist coverage in New Mexico.*

The Court finds request for production #48 overbroad. While limited to New Mexico, it lacks a reasonable time limitation and uses the omnibus term "concerning" alongside "documents," "reports," "notes," and "communications." As phrased, the request implicates benign and outdated references to Liberty Mutual's uninsured/underinsured motorist coverage. Therefore, the Court SUSTAINS Liberty Mutual's objection.

**B.    Liberty Mutual Must Adequately Respond to Interrogatories #1, 10–11 and Requests for Production #2–4, 7, 46–47, and 49.**

For these discovery requests where Liberty Mutual offered a response, the Court overrules Liberty Mutual's objections and considers whether its responses are sufficient.

1.    *Interrogatory #1: Individuals contributing to Liberty Mutual's discovery responses.*

Liberty Mutual identified Jason Shattuck and Joe Solimine as managerial employees who assisted answering interrogatories #1–3 and #7–11. Liberty Mutual did not address interrogatories #4–6 nor the requests for production. Renteria objects to the lack of contact information included and accuses Liberty Mutual of "hiding crucial witnesses." [Doc. 69, at 9]. Liberty Mutual responds it identified the only individuals who assisted in discovery and asserts that contact information was neither requested nor appropriate given Shattuck and Solimine must be reached through Liberty Mutual's counsel. [Doc. 69-2, at 8]; [Doc. 73, at 3]. Renteria replies by citing staff Shattuck mentioned in his deposition as having assisted him with discovery.

For entity parties, Rule 33(b)(1)(B) permits "any officer or agent, who must furnish the information available to the party," to answer interrogatories. "Available information" includes all

12

information an agent or officer can obtain with reasonable effort, including from other agents, representatives, and current and former employees. *Dalton v. Town of Silver City*, No. 17-cv-01143, 2021 WL 4307149, at *6 (D.N.M. Sept. 22, 2021). However, the officer or agent need not expend undue labor and expense tracking it down. *City of Las Cruces*, 2021 WL 330062, at *8. If the party cannot give a full, fair, and specific answer to an interrogatory, its officer or agent must state so under oath and describe their efforts to do so. *Id.*

The Court does not find that Liberty Mutual hid responsive individuals to Renteria's interrogatory. As Rule 33(b)(1)(B) demonstrates, an entity's "knowledge" is diffused across multiple individuals, departments, and records. However, the "responder" to the interrogatory is the officer or agent who gathers that knowledge. While requests for production do not have an equivalent to Rule 33(b)(1)(B), the logic is the same; it is not incomplete to identify the individuals who helped counsel with discovery simply because it leaves out the sources that they in turn consulted, and so on. *See Prendergast v. Fundamental Long Term Care Holdings, LLC*, No. 07-cv-01265, 2009 WL 10708127, at *2 (D.N.M. Mar. 31, 2009). The case which Renteria cites in opposition, *Walker v. THI of New Mexico at Hobbs Center*, is distinguishable. In *Walker*, the party failed to identify the corporate employees who directly assisted in discovery, not the individuals who helped the agents who in turn helped counsel, as is the case here. *Walker*, No. 09-cv-00060, 2010 WL 4929069, at *8 (D.N.M. Oct. 20, 2010).

However, Liberty Mutual's response is deficient by not confirming, as it asserts in briefing, that Shattuck and Solimine were the only agents who assisted counsel on all of Renteria's discovery requests. Therefore, the Court ORDERS Liberty Mutual to affirm no other agents besides Solimine and Shattuck assisted counsel in responding to all interrogatories, requests for

production, and requests for admission served by Renteria. However, if other agents did assist

counsel, Liberty Mutual must name them.

Regarding contact information, Renteria does not dispute that he must contact Shattuck

and Solimine, as managerial employees, through counsel. *Pruess v. Presbyterian Health Plan, Inc.*,

579 F. Supp. 3d 1235, 1242 (D.N.M. 2022). However, if Liberty Mutual identifies additional

individuals whom Renteria may contact directly, their contact information is relevant for finding

deposable witnesses and must be provided. *See id.*

2.    *Interrogatory #3: Identifying the individual with the most personal knowledge of Liberty Mutual's policies and procedures regarding OneSpan electronic signing ceremonies.*

Liberty Mutual identified Shattuck in response. [Doc. 69-2, at 11]. Renteria argues that

Shattuck testified in his deposition that he was not the individual with the most personal knowledge

about Liberty Mutual's policies and procedures for the electronic signing ceremony. [Doc. 69, at

11]. Liberty Mutual disputes the argument as a mischaracterization of his testimony. [Doc. 73, at

7–8]. Shattuck testified he had the most personal knowledge about Liberty Mutual's policies and

procedures for using OneSpan, but not the contract itself between the two companies. [Doc. 73-1,

at 2–3]. On that evidence, Liberty Mutual properly responded to the interrogatory.

3.    *Interrogatory #10: Whether Liberty Mutual first anticipated litigation on Renteria's claim before March 15, 2023, and "in detail," the reason that Liberty Mutual formed its belief.*

Liberty Mutual answered that it "retained counsel" in 2023 following a communication

from Renteria's counsel about his e-signature. [Doc. 69-2, at 18]. While Renteria takes issue with

the phrase "retained counsel" as opposed to "anticipated litigation," Liberty Mutual asserts the

answer is fully responsive. [Doc. 73, at 14]. Liberty Mutual also argues that any communications

and documents an insurer produces after a claim's final decision are presumed protected by

attorney-client privilege and the work product doctrine. *Montoya v. Loya Ins. Co.*, No. 18-cv-

00590, 2019 WL 430881, at *3 (D.N.M. Feb. 4, 2019) (citing *Sedillo Elec. v. Colo. Cas. Ins. Co.*, No. 15-cv-01172, 2017 WL 3600729, at*3 (D.N.M. Mar. 9, 2017)).

By implication supported by Liberty Mutual's assertion that its answer was responsive to the question, the Court finds that Liberty Mutual's answer describes when it first "anticipated litigation." Regarding the request for Liberty Mutual's reasons for retaining counsel, the Court addresses Liberty Mutual's attorney-client privilege and work product objections in Part IV.C below.

4.    *Interrogatory #11: Whether Liberty Mutual destroyed, lost, or otherwise no longer has possession of responsive documents to interrogatory #10.*

Interrogatory #11 asks for details about any documents "no longer … in Liberty Mutual's possession or subject to its control" that were "referenced and/or relied upon in answering the above interrogatory," apparently referring to Interrogatory #10. [Doc. 69-2, p. 18]. Liberty Mutual responded that it is "unaware of having destroyed documents related to" Renteria's claim. [Doc. 69-2, at 19]. Renteria argues the response is incomplete in light of Solimine's and Shattuck's deposition testimony and the word choice "destroyed." [Doc. 76, at 7]. The Court agrees that "destroyed" does not encompass all circumstances by which Liberty Mutual may have lost possession or control of relevant documents. The Court therefore ORDERS Liberty Mutual to supplement its answer by stating whether, and if so how, it lost possession or control of any documents responsive to interrogatory #11. The interrogatory requires specific details about the circumstances but not a description of the substantive content of any document. Therefore, the Court overrules any privilege objections unless Liberty Mutual provides with its response a privilege log identifying with specificity which information requested would violate a privilege.

5.    *Requests for production #2–4, 7: May 18, 2021, OneSpan signing ceremony data and emails, data concerning the destruction or deletion of emails sent or received during the ceremony, and data concerning the "eservice portal" used to execute Renteria's policy.*

15

Renteria objects to Liberty Mutual's references to prior disclosures as responses to requests #2, 3, and 7 and its averment that no other responsive documents exist for requests #3 and 4. [Doc. 69, at 20]. Citing Rule 34(b)(2)(E), Renteria asserts Liberty Mutual failed to provide documents as they are kept in the usual course of business or otherwise organized and labeled corresponding with the requests' categories. *Id*. Liberty Mutual responds that Renteria seeks to force "busy work" on it when the burden of extracting the relevant information is equal between the two parties. [Doc. 73, at 16].

The Court finds that Liberty Mutual violated Rule 34(b)(2)(E). Liberty Mutual does not contest that it failed to produce their documents with appropriate formatting and organization. *Id.* The Minnesota decision Liberty Mutual cites in support of its "busy work" objection did not involve a breach of that obligation. *See Smartmatic USA Corp. v. Lindell*, No. 22-cv-00098, 2024 WL 1618349, at *23 (D. Minn. Apr. 15, 2024). And whatever equality of labor may exist between the parties in identifying and cataloging responsive information in Liberty Mutual's disclosures, Rule 34(b)(2)(E) assigns that burden to Liberty Mutual. *See Strobel v. Rush*, No. 18-cv-00656, 2020 WL 8079786, at *4 (D.N.M. Jan. 23, 2020).

As for Liberty Mutual's answers to requests for production #3 and 4 that no responsive documents exist, Renteria disputes only the lack of clarity around whether Liberty Mutual withheld any responsive documents. [Doc. 76, at 9] (discussing request #3). Therefore, the Court ORDERS Liberty Mutual supplement its response by producing any remaining documents responsive to Renteria's requests for production #2 and 7 in accordance with Rule 34(b)(2)(E), and to affirmatively state that it did not withhold any documents responsive to requests #3 and 4.

6.   *Requests for production #46–47, 49: Information regarding similar claims to Renteria's and all documents relied on for interrogatories and requests for admission.*

16

Liberty Mutual avers it has no record of similar misconduct claims to Renteria's and that it produced all documents upon which it relied for the interrogatories and requests for admission with its initial disclosures. [Doc. 69-2, at 53–55]. However, recognizing that Liberty Mutual also lodged objections to these requests, the Court ORDERS Liberty Mutual to supplement its responses by affirming that it has not withheld any responsive documents. *See Smash Tech.*, 335 F.R.D. at 447.

**C.     The Court Will Limit the Disclosure of Liberty Mutual Personnel Files but Will Not Consider Liberty Mutual's Attorney-Client Privilege, Work Product Doctrine, or Other Privilege Objections.**

   *1.     Applicable law for attorney-client privilege, work product doctrine, and privilege-based discovery objections.*

In cases where a federal court exercises diversity jurisdiction, state law supplies the rules of decision for attorney-client privilege while federal law controls the work product doctrine. *Frontier Refin., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699, 702 n.10 (10th Cir. 1998). Under New Mexico law, attorney-client privilege encompasses any communication made in confidence between attorney and privileged persons for the purpose of facilitating professional legal services to a client. *Bhandari v. Artesia Gen. Hosp.*, 2014-NMCA-018, ¶ 11, 317 P.3d 856, 860 (citing *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 14, 175 P.3d 309, 315). The work product doctrine extends further, limiting a party's ability to obtain otherwise discoverable material prepared "by or for another party or its representative" in anticipation of litigation or trial. Fed. R. Civ. P. 26(b)(3)(A).

A party objecting to a discovery request on grounds of attorney-client privilege, the work product doctrine, or any other privilege must identify and describe any withheld material, without revealing their content, to assess if the protections apply. Fed. R. Civ. P. 26(b)(5)(A)(ii); *see Santa Fe Pac. Gold Corp.*, 2007-NMCA-133, ¶ 21, 175 P.3d at 317; *Tex. Brine Co., LLC & Occidental*

*Chem. Corp.*, 879 F.3d 1224, 1229 (10th Cir. 2018). The failure to do so permits courts to find

waiver of the privilege. *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007).

> 2. *Requests for production #21–23: Compensation plans, performance plans, performance evaluations, and personnel files for individuals identified in Liberty Mutual's interrogatory responses.*

Renteria requests production of the following personnel documents:

> [RFP #21]: All documents concerning the compensation plans of individuals identified in response to Plaintiff's Interrogatories, including Liberty Mutual's variable incentive programs, incentives, performance review, pay for performance, or similar programs applicable to its operations.

> [RFP #22]: All documents[,] performance plans, performance evaluations, and other job performance related documents concerning individuals identified in response to Plaintiff's Interrogatories.

> [RFP #23]: All documents contained in the personnel file, employment file, or other similar file, concerning individuals identified in response to Plaintiff's Interrogatories.

[Doc. 69-2, at 38–41].

Liberty Mutual objects to producing compensation plans and personnel files for its

employees based on their sensitivity. [Doc. 69-2, at 38–43]. Renteria asserts they are relevant as

matter of course given his claims are premised on bad faith conduct but does not object to having

limitations and a protective order imposed by the Court. [Doc. 69, at 22–23]; [Doc. 76, at 10]. The

parties have an active protective order that applies to material "subject to protection under the laws

of the State of New Mexico." [Doc. 43, at 3].

The Tenth Circuit advises sensitivity towards the disclosure of personnel files given the

private information found therein. *Regan-Touhy*, 526 F.3d at 648–49. The Rules of Civil Procedure

empower courts to restrict discovery to "protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1) (protective orders). For bad faith

insurance claims, this Court has recognized sensitivity concerns limit, but do not prohibit, the disclosure of personnel files and compensation structures. *Barela*, 2014 WL 11497826, at \*10.

As currently phrased, Renteria's requests for production would apply to all personnel files and performance plans for employees beyond those who handled Renteria's policy and 2022 collision claim. That scope subsumes sensitive information like health plans, candid but irrelevant supervisor evaluations, and personal data. *See Berwick v. Hartford Fire Ins. Co., Inc.*, No. 11-cv-01384, 2012 WL 573939, at \*5 (D. Colo. Feb. 21, 2012). Therefore, the Court SUSTAINS the objection to requests for production #21–23 in part but overrules the objection in part and ORDERS production of the personnel files of the individuals who managed Renteria's insurance policy and 2022 collision claim. The required disclosures shall only apply to their educational and professional background, qualifications, training, compensation, and job performance relating to uninsured/underinsured motorist coverage policies and claims, including disciplinary measures. *Barela*, 2014 WL 11497826, at \*10.

> 3.      *Liberty Mutual's other privilege objections are improperly raised, but the Court will permit Liberty Mutual to re-raise them.*

Liberty Mutual states its remaining attorney-client privilege, work product doctrine, and confidentiality objections summarily without providing a privilege log.[6] The Court will order Liberty Mutual to provide a sufficient privilege log to support any claims of privilege it intends to preserve with its supplemental responses ordered herein. *See Certain Underwriters of Lloyd's v. Old Republic Ins. Co.*, No. 13-cv-00701, 2015 WL 12748248, at \*9 (D.N.M. Aug. 18, 2015).

## V.    CONCLUSION

The Court GRANTS IN PART Renteria's motion to compel and orders the following:

---

[6] While the parties reference the existence of a privilege log, Liberty Mutual does not contest Renteria's assertion that the log was insufficient.

(i)     Liberty Mutual shall supplement its responses to **interrogatories #1–2, 4–5, and 7–11**, as well as **requests for production #1–23, 29, 37, 42, 44–47, and 49** in accordance with the Court's orders above within **thirty (30) days** of this order.

(ii)    If Liberty Mutual claims an evidentiary privilege prohibits disclosure of any requested information, it shall file with its responses a privilege log as required by Fed. R. Civ. P. 26(b)(5)(A)(ii).

(iii)   Renteria shall re-serve **requests for production #24–28 and 30–31** in accordance with the Court's orders above within **fourteen (14) days** of this order. Upon service, Liberty Mutual shall respond within **thirty (30) days**.

As the Court grants Renteria's motion in part and partially sustains Liberty Mutual's objections as substantially justified, the Court ORDERS Renteria and Liberty Mutual to bear their own expenses for the motion. Fed. R. Civ. P. 37(a)(5)(A)(ii), (C); *Benavidez*, 319 F.R.D. at 730.

       IT IS SO ORDERED.

_____
Hon. Jerry H. Ritter
United States Magistrate Judge