IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JAVIER RENTERIA,**

    **Plaintiff,**

v.                                                                    No. 1:23-cv-01093-KK-JHR

**LIBERTY MUTUAL PERSONAL
INSURANCE COMPANY,
LIBERTY MUTUAL GROUP, INC.,
LIBERTY MUTUAL INSURANCE COMPANY,
ONESPAN, INC., and
ONESPAN NORTH AMERICA, INC.,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT DISCOVERY [DOC. 110]

THIS MATTER comes before the Court on Javier Renteria's Motion for Leave to Conduct Discovery. [Doc. 110]. Defendants OneSpan, Inc. and OneSpan North America, Inc. (collectively, "OneSpan Defendants") filed a response in opposition [Doc. 115], and Defendants Liberty Mutual Personal Insurance Company, Liberty Mutual Group, Inc., and Liberty Mutual Insurance Company (collectively, "Liberty Mutual Defendants") did not take a position [Doc. 113]. Renteria filed a reply to OneSpan Defendants' response. [Doc. 120]. The parties also gave oral arguments on July 11, 2025. The Court has reviewed the briefing, oral arguments, case record, and applicable law and now GRANTS the motion.

### I.    RELEVANT BACKGROUND

Renteria filed his original complaint against Liberty Mutual Personal Insurance Company on December 8, 2023. [Doc. 1]. Renteria alleged that Liberty Mutual used a fraudulent electronic signature to waive certain uninsured/underinsured (UM/UIM) motorist coverage and deny benefits following a severe car accident in 2022. *Id.* at 7–8. Liberty Mutual filed its answer on February

1

19, 2024, denying liability and pleading a counterclaim for declaratory relief. [Doc. 9]. On December 2, 2024, Renteria filed an amended complaint adding the other Defendants and new and revised factual allegations. [Doc. 79]. Renteria alleged that OneSpan, the company which developed and sold to Liberty Mutual the electronic signature application used by Renteria, worked with Liberty Mutual to integrate the application into Liberty Mutual's eServices platform in a manner that produced the fraudulent signature verification. *Id.* at 4.

On January 27, 2025, OneSpan Defendants moved to dismiss Renteria's claims against them for lack of personal jurisdiction. [Doc. 99]. OneSpan Defendants argued they did not have sufficient contacts with New Mexico to support jurisdiction, with their only involvement in the suit being sale of the signature application to Liberty Mutual without knowledge of the states in which the company would use it. *Id.* at 5–6. Renteria responded that OneSpan Defendants marketed their products in all fifty states and continued acting as a third-party service provider to Liberty Mutual by authenticating its customers' electronic signatures. [Doc. 104]. In reply, OneSpan Defendants submitted the affidavit of Francois Leblanc, OneSpan Canada Inc.'s director of technical sales. [Docs. 105, 106]. Leblanc attested Renteria misrepresented its marketing material, OneSpan did not "execute any records" between Liberty Mutual and its customers, and OneSpan had no "visibility" of the encrypted user data of Liberty Mutual's customers. [Doc. 106]. On Leblanc's declaration, OneSpan Defendants argued Renteria had no factual support for his jurisdiction-related allegations. [Doc. 105].

On March 5, 2025, Renteria filed the instant motion for discovery [Doc. 110] and a motion for leave to file surreply [Doc. 109], arguing OneSpan Defendants had raised new arguments and evidence not contained in their original motion to dismiss. The Court only addresses the motion for discovery here.

2

## II.     BRIEFING SUMMARY

Renteria seeks jurisdictional discovery of OneSpan's business and contracts in New Mexico because the dispute over OneSpan's role in customer signature verification for Liberty Mutual warrants further development. [Doc. 110, at 2–4]. In response, OneSpan Defendants argue Renteria's factual assertions are pure speculation and that Liberty Mutual performed all signature authentication on its own with OneSpan's application. [Doc. 115, at 2–4]. At minimum, OneSpan Defendants ask the Court to reject Renteria's proposed discovery as overly broad. *Id.* at 5. In reply, Renteria argues OneSpan Defendants overstate the burden for jurisdictional discovery and overlook his attached supporting exhibits. [Doc. 120].

## III.    APPLICABLE LAW

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). Generally, discovery is needed if material jurisdictional facts are disputed or a more satisfactory showing of the facts is necessary for the court to rule on the motion to dismiss. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020). Conversely, discovery requests that will likely not affect the outcome of the case may be safely denied. *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012). Whether to grant or deny jurisdictional discovery is left to the discretion of the court. *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002).

The party seeking jurisdictional discovery has the burden of proving its merit. *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010). To do so, the party must give a "modicum of objective support." *McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1195 (D.N.M. 2013) (quoting

*Martinez v. Cornell Corr. of Tex.*, 229 F.R.D. 215, 218 (D.N.M. 2015)). A "modicum" in this context means the "plaintiff must first provide some reasonable allegations on which to base the pursuit of discovery." *Id.*

### IV.     ANALYSIS

The jurisdictional analysis in this case hinges in part on whether OneSpan's role in this case more closely resembled a service provider or a vendor. Renteria argues that OneSpan actively assisted Liberty Mutual with receiving, assessing, and compiling customer data to authenticate signatures and sending proof of authentication to Liberty Mutual. In addition, Renteria contends that Liberty Mutual and OneSpan worked together to integrate the signature application into Liberty Mutual's eServices platform leading, in turn, to the disputed signature data on the UM/UIM coverage waiver. Renteria needs jurisdictional discovery to further develop the extent of OneSpan's involvement in these matters.

OneSpan Defendants argue their role began and ended with the sale of the electronic signature application to Liberty Mutual. Analogizing the application to a pen which Liberty Mutual and its customers used to help document their contracts, OneSpan Defendants assert Liberty Mutual alone received, assessed, and stored electronic signature data. OneSpan had no ability to see Liberty Mutual customers' encrypted records and no knowledge of the states in which Liberty Mutual used the application.

These factual disputes—OneSpan's accessing, storing, and/or processing of Liberty Mutual customer data, its provision of authentication services to Liberty Mutual, and what it knew about where its application was being used by Liberty Mutual—are material and potentially dispositive. *See Xmission, L.C. v. Fluent, LLC*, 955 F.3d 833, 841–45, 849 (10th Cir. 2020) (discussing different formulations of the "purposeful availment" test for specific personal

4

jurisdiction). Thus, they warrant development through discovery if Renteria has produced a modicum of objective support for his theory. The Court finds that he has.

First, Renteria pointed to a "OneSpan Sign Electronic Evidence Summary" created for his disputed insurance policy. [Doc. 104-1]. The document states Renteria signed an "Uninsured Motorist Form" using the email "insured1@libertymutual.com" and provides an audit trail for Renteria's IP address. *Id.* at 1–2. Renteria asserts the summary is evidence that OneSpan had access to Liberty Mutual customers' data including the ability to discern their geolocation. OneSpan Defendants point to Leblanc's declaration as proof the data would have been encrypted and unreadable to them. [Doc. 105, at 3–4].

The declaration states:

OneSpan had no access to Liberty Mutual's eServices platform . . . [w]hen the documents were processed through OneSpan Sign for e-signatures, they were encrypted such that the OneSpan Defendants did not have visibility into the substance of the documents being signed . . . [or] where contracts were to be performed.

[Doc. 106, at 2–3]. That statement does not foreclose OneSpan's possession of nor access to customer data, however. A lack of "visibility" due to encryption cannot mean that OneSpan's software could not decipher the documents, at least to the level necessary to perform its processing function; Renteria is entitled to know more about that process. At oral argument, OneSpan asserted the evidence summary existed in Liberty Mutual's records alone. However, Renteria provided the deposition testimony of Jason Shattuck, a managerial employee of Liberty Mutual, [Doc. 110, at 46]; [Doc. 104-9], who testified that the electronic evidence summaries are "generated" by OneSpan, who would have its own "internal retention policies" for them. [Doc. 104-9, at 2]. Thus, the evidence summary supports Renteria's argument that OneSpan received and compiled Liberty Mutual customer data.

5

Renteria also argues the evidence summary shows that integration of OneSpan's application into Liberty Mutual's platform required insertion of the placeholder "insured1" email address as a fix for a bug in the coding. OneSpan responds that the argument relies on a "hunch," as the evidence summary itself does not document that process. But Shattuck testified that for any "bug" in OneSpan's code or process, Liberty Mutual would contact OneSpan's help desk to assist with integration. [Doc. 110, at 46]. Renteria is entitled to investigate whether OneSpan initiated or ratified modification of its software in a way that prevented notice to Renteria of material issues with his policy.

Renteria also relies upon a screenshot purportedly of "signature properties" and reflecting Renteria's signature was "VALID, signed by OneSpan (TM) <cloud_operations@onespan.com>." [Doc. 104-4, at 1]. The exhibit links the "insured1" email to Renteria's account and includes Renteria's IP address. *Id.* Renteria argues the exhibit shows that OneSpan collected and packaged Liberty Mutual customer data in order to verify electronic signatures. OneSpan did not address the specific exhibit but stated generally that customer data collection was performed by Liberty Mutual with OneSpan's application, not by OneSpan in real time as a service. Shattuck, however, testified that Liberty Mutual obtains these records by "download . . . directly from OneSpan." [Doc. 104-9, at 3].

These exhibits provide a modicum of support that OneSpan actively assisted in the integration of its electronic signature application into Liberty Mutual's platform and performed some level of customer data retention, analysis, and compilation. To be sure, OneSpan Defendants offer reasonable alternative explanations for these exhibits. Reasonable but competing interpretations of evidence, however, warrant further discovery to enable the Court to resolve the motion to dismiss.

6

The Court agrees with OneSpan Defendants that Renteria does not justify the entire scope of discovery he proposes, and Renteria does not object to modification. Therefore, the Court will approve discovery limited to certain matters.

## V. CONCLUSION

The Court GRANTS Renteria's motion for jurisdictional discovery on the following matters:

- OneSpan's role in the integration of the OneSpan Sign electronic signature application into Liberty Mutual's eServices platform.

- OneSpan's role in the collection, storage, and compilation of Liberty Mutual customer data for electronic signatures, including the generation of evidence summaries and signature properties. This matter shall be limited to Liberty Mutual's New Mexico operations and the timeframe from the beginning of negotiations for Renteria's policy through Liberty Mutual's decision to cease using OneSpan.

Renteria and OneSpan Defendants shall meet and confer to develop a proposed discovery plan within **fourteen (14) days** of this order. If the parties can agree on a plan, they may submit a proposed order for approval. If not, the parties shall submit a joint status report listing their stipulated and disputed discovery parameters, and the Court will set a scheduling conference to finalize a discovery plan.

IT IS SO ORDERED.

_____
Hon. Jerry H. Ritter
United States Magistrate Judge